**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

ALAN HAMM,

                                    Plaintiff,

        v.                                                    No. 9:13-CV-1302
                                                              (BKS/CFH)
M. FARNEY, ASAT Counselor;
Gouverneur Correctional Facility,

                                    Defendant.

_____


**APPEARANCES:**                               **OF COUNSEL:**

Alan Hamm
King Boro Men's Shelter
681 Albany Avenue
Brooklyn, New York
Plaintiff pro se

Hon. Eric T. Schneiderman                      KEITH J. STARLIN, ESQ.
Attorney General for the                       Assistant Attorney General
    State of New York
The Capitol
Albany, New York 12224
Attorney for Defendant

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

**REPORT-RECOMMENDATION AND ORDER**[1]

        Plaintiff pro se Alan Hamm ("plaintiff"), a former inmate who was, at all relevant

times, in the custody of the New York Department of Corrections and Community

_____

[1] This matter was referred to the undersigned for Report-Recommendation and Order pursuant to
28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

Supervision ("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983, alleging that defendant John Farney (sued herein as "M. Farney")[2] – who, at all relevant times, was employed at Gouverneur Correctional Facility ("Gouverneur") – violated his constitutional rights under the Fourteenth Amendment, as well as Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. Dkt. No. 51 ("Am. Compl."). Presently pending before the Court is defendant's Motion for Summary Judgment pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ. P.") 56. Dkt. No. 112. Plaintiff did not file a response. For the following reasons, it is recommended that defendant's motion be granted.

## I. Failure to Respond

Plaintiff did not oppose defendant's Motion for Summary Judgment and did not ask for an extension of time to respond. Plaintiff was notified of the consequences of failing to respond to a summary judgment motion. Dkt. No. 113. Thus, plaintiff was adequately apprised of the pendency of the motion and the consequences of failing to respond. However, "[t]he fact that there has been no response to a summary judgment motion does not . . . mean that the motion is to be granted automatically." Champion v. Artuz, 76 F.3d 483, 486 (2d Cir. 1996). Even in the absence of a response, a defendant is entitled to judgment only if the material facts demonstrate his entitlement to judgment as a matter of law. Id.; FED. R. CIV. P. 56(c). Additionally, "[a] verified complaint is to be treated as an

---

[2] The Clerk of the Court is directed to correct the caption on the docket to reflect John Farney as the proper defendant.

affidavit . . . and therefore will be considered in determining whether material issues of fact exist . . . ."  Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995) (citations omitted). Consequently, the facts set forth in defendant's Rule 7.1 Statement of Material Facts are accepted as true, but only as to those facts that are not disputed by the facts set forth in the verified amended complaint. N.D.N.Y. L.R. 7.1(a)(3) ("The Court shall deem admitted any properly supported facts set forth in the Statement of Facts that the opposing party does not specifically controvert.") (emphasis omitted).  Plaintiff and defendant offer similar accounts of the events that transpired, and few facts are in dispute.  See Am. Compl., Dkt. No. 112-1.

## II. Background

### A. Plaintiff's Recitation of the Facts

The facts are related herein in the light most favorable to plaintiff as the nonmoving party. See subsection III.A. infra.  Plaintiff alleges that on April 16, 2013, while participating in the Alcohol and Substance Abuse Treatment ("ASAT") program at Gouverneur, ASAT Counselor Mr. Farney reprimanded him for using the restroom, "despite Mr. Farney knowing that [he had] a medical condition that requires [him] to urinate frequently."  Am. Compl. at 3-4.  Mr. Farney directed plaintiff to write an essay as to why it was inappropriate to use the bathroom during class, and recite it aloud during the next class.  Id. at 4.  If he refused, plaintiff would be removed from the ASAT program.  Id.  Plaintiff voluntarily removed himself from the ASAT program "as neither of the two options that [Mr. Farney] offered . . . would have accommodated [him] for his medical disability."  Id.  In response

3

to plaintiff's resignation from the program, the Time Allowance Committee ("TAC")
rescinded his good behavior allowance (good time credits), and directed that DOCCS hold
plaintiff in prison until his maximum expiration date.  Am. Compl. at 4.

## B. Defendant's Recitation of the Facts

In support of this motion, defendant filed a Statement of Material Facts.[3]  On April
16, 2013, plaintiff was enrolled in Gouverneur's ASAT program.  Dkt. No. 112-1 ¶ 17.  The
program consists of a series of "program modules" concerning alcohol and substance
abuse, which takes between six and twelve months to successfully complete.  Id. ¶¶ 7, 18.
Prior to admission, inmates must sign an ASAT Screening Questionnaire.  Id. ¶¶ 20, 21
(internal quotation marks and citation omitted).  The Questionnaire states that inmates
"agree to abide by all the ASAT program policies and procedures."  Id. ¶ 22 (internal

---

[3] Local Rule 7.1(a)(3) states:

Summary Judgment Motions

Any motion for summary judgment shall contain a Statement of Material
Facts.  The Statement of Material Facts shall set forth, in numbered
paragraphs, each material fact about which the moving party contends
there exists no genuine issue. Each fact listed shall set forth a specific
citation to the record where the fact is established. The record for
purposes of the Statement of Material Facts includes the pleadings,
depositions, answers to interrogatories, admissions and affidavits.

The opposing party shall file a response to the Statement of Material
Facts. The non-movant's response shall mirror the movant's Statement
of Material Facts by admitting and/or denying each of the movant's
assertions in matching numbered paragraphs. Each denial shall set forth
a specific citation to the record where the factual issue arises. The
non-movant's response may also set forth any additional material facts
that the non-movant contends are in dispute. Any facts set forth in the
Statement of Material Facts shall be deemed admitted unless specifically
controverted by the opposing party.

N.D.N.Y. L.R.  7.1(a)(3).

4

quotation marks and citation omitted).  Plaintiff received and signed the ASAT Screening Questionnaire during his program admission process on February 7, 2013.  Id. ¶ 20.

Inmates participating in the ASAT program also must sign a Behavior Contract which "specifically states, in part, that participating inmates must abide by all program policies and procedures; must participate in group sessions in a respectful manner; and that failure to comply with ASAT program policies and procedures will result in disciplinary action which may include dismissal from the program."  Dkt. No. 112-1 ¶ 25 (internal quotation marks and citation omitted).  The Behavior Contract further mandates that inmates "must be present for all treatment activities and may not leave group . . . without permission," as well as "sit in an appropriate and attentive manner in [their] assigned seat." Id. ¶¶ 26, 27 (internal quotation marks and citation omitted).  A violation of these procedures and policies "may result in discharge from treatment, disciplinary action, behavioral contracts, learning experiences, pull ups, a referral to Treatment Plan Review Committee, or counseling notifications."  Id. ¶ 28 (internal quotation marks and citation omitted).  Moreover, if an inmate "refuse[s] or sign[ed] out of treatment, or if [he is] unsatisfactorily discharged from treatment, [he] must wait 30 days from the date of discharge before he can request consideration for readmission." Id. ¶ 29.  Plaintiff signed the Behavior Contract.  Id. ¶ 28.

Although the Behavior Contract mandated that inmates use the restroom during designated breaks, Mr. Farney allowed participating inmates to use the restroom during class, as long as they asked permission in advance.  Dkt. No. 112-1 ¶¶ 30, 31.  Before April 16, 2013, on at least one other occasion, plaintiff used the restroom during an ASAT

5

program session without first asking permission. Id. ¶ 40.  In response, Mr. Farney verbally warned plaintiff that he needed to ask permission before leaving his seat. Id. ¶ 41.  Plaintiff did not mention to Mr. Farney that he had a medical condition that caused him to urinate frequently. Id. ¶ 42.  On April 16, 2013, plaintiff again left his seat during the ASAT program session to use the restroom without asking permission. Id. ¶ 43.  As not to disrupt an ongoing presentation, Mr. Farney waited until plaintiff returned to his seat to counsel plaintiff, reminding him that he needed permission to use the restroom. Id. ¶¶ 43, 44, 47. Pursuant to the ASAT program's standards, policies, and procedures, Mr. Farney issued plaintiff an Inmate Counseling Notification and instructed him to write a five hundred word essay on the importance of respecting others in the ASAT program session. Id. ¶¶ 48, 51. Mr. Farney further instructed plaintiff to recite the essay aloud to the class. Id. ¶ 51.  Mr. Farney had assigned such "learning experiences" on "countless" other occasions for the same conduct. Id. ¶ 52.  Plaintiff refused to write the essay, and, instead, voluntarily signed a Program Refusal Notification form, effectively withdrawing himself from the program. Id. ¶¶ 54, 55.  The Program Refusal Notification form affirmed that plaintiff "acknowledged that he was refusing to participate in the ASAT program, and that he understood that his refusal to participate could result in denial of Parole, the loss of Good Time, denial of Merit Time and/or Earned Eligibility Program certificate and ineligibility for an area of preference transfer." Id. ¶ 56.  Mr. Farney also verbally informed plaintiff of the consequences of signing the Program Refusal Notification form. Id. ¶ 57.

Plaintiff did not mention a medical condition until after Mr. Farney instructed him to write the essay.  Dkt. No. 112-1 ¶ 59.  Before April 16, 2013, Mr. Farney did not notice

plaintiff using the restroom more frequently than normal, nor did plaintiff provide Mr. Farney or the ASAT staff with documentation of such medical condition.  Id. ¶¶ 60, 62.

In April 2013, the TAC reviewed plaintiff's file and determined that he should not be granted three months of good time from his total potential allowance of one year, eight months, and twenty days.  Dkt. No. 112-1 ¶¶ 74-75.  The Committee based its decision on plaintiff's entire file, as well as his withdrawal from a series of programs, including, in part, the April 16, 2013 withdrawal from the ASAT program.  Id. ¶ 76.

## III. Discussion[4]

### A. Summary Judgment Standard

"A court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  The moving party has the burden of showing the absence of disputed material facts by providing the Court with portions of "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which support the motion.  FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A fact is material if it may affect the outcome of the case as determined by substantive law, such that "a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "In determining whether summary judgment is appropriate, [the Court will] resolve all ambiguities and draw all

---

[4] All unpublished opinions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

reasonable inferences against the moving party." Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

To avoid summary judgment, a non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Carey v. Crescenzi, 923 F.2d 18, 19 (2d Cir. 1991) (quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)) (internal quotation marks omitted).  A non-moving party must support such assertions by evidence showing the existence of a genuine issue of material fact.  Id.  "When no rational jury could find in favor of the non-moving party because the evidence to support is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." Gallo v. Prudential Services, Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994).

Where, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude.  See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006).  As the Second Circuit has stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to "special solicitude," . . . that a pro se litigant's submissions must be construed "liberally," . . . and that such submissions must be read to raise the strongest arguments that they "suggest," . . . .  At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, . . . or arguments that the submissions themselves do not "suggest," . . . that we should not "excuse frivolous or vexatious filings by pro se litigants," . . . and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law . . . ."

Id. (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191-92 (2d Cir. 2008).

8

**B. Exhaustion**

As a threshold matter, defendant contends that plaintiff has failed to exhaust his administrative remedies.  Dkt. No. 112-21 at 4-11.  Plaintiff argues that he exhausted his administrative remedies.  Am. Compl. at 6.  He contends that despite "foul play" on behalf of the Superintendent and Central Office Review Committee ("CORC"), he sent the grievance office his appeal of the Superintendent's decision to send to CORC, and  "the grievance office informed plaintiff that they did not receive [his] appeal." Id. at 25.  On April 19, 2013, the Gouverneur Inmate Grievance Review Committee ("IGRC") received plaintiff's April 16, 2013 grievance (GOV-16890-13) about the April 16, 2013 incident in the ASAT program.  Dkt. No. 112-1 ¶ 108.  The IGRC denied that grievance, and plaintiff appealed the decision to the Superintendent.  Id. ¶ 109.  On May 6, 2013, the Superintendent upheld the IGRC's denial of grievance GOV-16890-13, and served plaintiff with two copies of that decision.  Id. ¶ 110.  Plaintiff did not appeal the Superintendent's decision to CORC.  Id. ¶ 111.

On November 14, 2014, the IGRC received plaintiff's second grievance (GOV-17852-14) dated November 9, 2014, which claimed that he had tried to appeal grievance GOV-16890-13, and inquired whether he would be permitted to file an appeal of that grievance to CORC.  Dkt. No. 112-1 ¶ 113.  The IGRC denied plaintiff's grievance and informed him that any appeal of grievance GOV-16890-13 should have been submitted within seven days of the Superintendent's decision.  Id. ¶ 114.  Plaintiff appealed the decision to the Superintendent.  Id.  On November 28, 2014, the Superintendent affirmed the IGRC's denial of grievance GOV-17852-14, and served plaintiff with two

9

copies of the decision. Id. ¶ 115. Plaintiff did not appeal the Superintendent's decision to CORC. Id. ¶ 116.

The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust any administrative remedies available to him or her before bringing an action for claims arising out of his or her incarceration. Porter v. Nussle, 534 U.S. 516, 524 (2002); see also Woodford v. Ngo, 548 U.S. 81, 82 (2006). The exhaustion requirement applies "to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter, 534 U.S. at 532). Further, the exhaustion requirement applies even where the prisoner seeks relief not available in the administrative grievance process, such as monetary damages. Id. at 524. To exhaust administrative remedies, the inmate must complete the full administrative review process set forth in the rules applicable to the correctional facility in which he or she is incarcerated. See Jones v. Bock, 549 U.S. 199, 218 (2007) (internal citation omitted).

Although the Supreme Court has deemed exhaustion mandatory, the Second Circuit has recognized that "certain caveats apply." Ruggiero v. Cty. of Orange, 467 F.3d 170, 175 (2d Cir. 2006) (citation omitted). The Supreme Court recently held that "[c]ourts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement." Ross v. Blake, __ U.S. __,136 S. Ct. 1850, 1862 (2016). Thus, the "special circumstances" exception in Hemphill v. New York, 680 F.3d 680, 686 (2d Cir. 2004) is no longer consistent with the statutory requirements of the PLRA. Williams v. Priatno, 829

F.3d 118, 123 (2d Cir. 2016).[5]

Although Ross eliminates the "special circumstances" exception, courts must still consider the PLRA's "textual exception to mandatory exhaustion." Ross, 136 S. Ct. at 1858. Under this exception, courts must determine whether administrative remedies were "available" to a prisoner. Id. The Supreme Court identified three circumstances where administrative remedies may be unavailable to a prisoner. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end — with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. at 1859 (citing Booth v. Churner, 532 U.S. 731, 736, 738 (2001)). "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." Id. Lastly, administrative remedies are unavailable where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 1860.

### 1. Did Plaintiff Exhaust his Administrative Remedies?

There is no genuine dispute that at all relevant times, DOCCS had in place a three-step inmate grievance program. N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5.[6]

---

[5] In Williams v. Priatno, the Second Circuit debated Ross's effect on Hemphill's estoppel exception. See Williams, 829 F.3d at 123. The Williams Court stated that "Ross largely supplants our Hemphill inquiry by framing the exception issue entirely within the context of whether administrative remedies were actually available to the aggrieved inmate." Id. (citing Ross, 136 S. Ct. at 1858-59).

[6] First, the inmate must file a complaint with an inmate grievance program ("IGP") clerk within twenty-one days of the alleged incident. Id. at § 701.5(a)(1). An IGP representative has sixteen calendar days to informally resolve the issue. Id. at § 701.5(b)(1). If no informal resolution occurs, the IGRC must hold a hearing within sixteen days of receipt of the grievance and must issue a written decision within two working days after the conclusion of the hearing. Id. §§ 701.5(b)(2)(i)-(ii). If the determination is unfavorable to the inmate, the inmate may appeal the IGRC's determination to the facility superintendent

11

Defendant concedes that plaintiff completed the first level of the grievance procedure – filing two grievances with IGRC – which were recorded, assigned grievance numbers, and decided. Dkt. No. 112-13 at 2. Defendant also does not dispute that plaintiff appealed both grievances to the Superintendent. See id. Plaintiff claims that he sent the Gouverneur grievance office his appeal of the Superintendent's decision of grievance GOV-16890-13 "to be processed up to [CORC]," but that the grievance office never received his appeal. Compl. at 6. However, the record establishes that plaintiff failed to submit an appeal of grievance GOV-16890-13 to CORC during the time he was housed in Gouverneur. DOCCS' records provide no evidence of plaintiff's appeal to CORC, even though plaintiff maintains that he filed such appeal. Dkt. Nos. 112-13 at 2; 112-17 at 2-3. Gouverneur's IGP Supervisor Laura Looker and DOCCS' Assistant Director of IGP Jeffrey Hale both declared that a search of the DOCCS database confirmed plaintiff's original grievance, as well as an appeal to the Superintendent, but produced no record of an appeal to CORC. Id.; see Dkt. Nos. 112-11 ("Looker Decl.") at 6; 112-16 ("Hale Decl.") at 4-5. Plaintiff has not offered evidence of his Appeal Statement or any other letter to CORC that the undersigned could consider as an attempt to comply with the exhaustion requirements. Moreover, even if plaintiff had submitted an appeal and failed to receive a response from CORC within forty-five days of filing, he was obligated to write to the Gouverneur IGP Supervisor to confirm that the appeal was transferred to CORC. See 7

---

within seven calendar days of receipt of the determination. Id. § 701.5(c)(1). If the superintendent's determination is unfavorable, the inmate may appeal to CORC within seven days after receipt of the superintendent's determination. Id. §§ 701.5(d)(i)-(ii). CORC must "review each appeal, render a decision on the grievance, and transmit its decision to the facility, with reasons stated, for the [inmate], the grievance clerk, the superintendent, and any direct parties within thirty (30) calendar days from the time the appeal was received." Id. § 701.5(d)(3)(ii).

N.Y.C.R.R. § 701.5(d)(3)(i) ("If a grievant does not receive a copy of the written notice of receipt within 45 days of filing an appeal, the grievant should contact the IGP supervisor in writing to confirm that the appeal was filed and transmitted to CORC."). Plaintiff's October 24, 2014 letter – sent to Gouverneur's IGP office nearly a year and a half after the alleged incident – does not constitute compliance with 7 N.Y.C.R.R. § 701.  See 7 N.Y.C.R.R. § 701.6(g)(1)(b) provides:

> The IGP supervisor may grant an exception to the time limit for filing an appeal of an IGRC or superintendent's decision based on mitigating circumstances (e.g., failure to implement action required by the IGRC or superintendent's decision within 45 days, etc.).  An exception to the time limit may not be granted if the request was made more than 45 days after the date of the decision unless the late appeal asserts a failure to implement the decision.

Plaintiff's October 24, 2014 letter does not offer any mitigating circumstances that would exempt him from the time limitations established in the regulations.  Am. Compl. at 15.  Plaintiff filed a subsequent letter on October 30, 2014, which requests another copy of the Superintendent's decision to appeal to CORC and states that the IGP office's failure to receive his appeal was "not due to error on [his] part." Id. at 22.  This letter also fails to establish mitigating circumstances as to why plaintiff waited nearly a year and a half to inquire whether CORC reached a decision on grievance GOV-16890-13. Id. Moreover, plaintiff sent both of his letters one year after he commenced this lawsuit, further establishing that plaintiff failed to exhaust his administrative remedies prior to initiating this action. Lopez v. Cipolini, 136 F. Supp. 3d 570, 582 (S.D.N.Y. 2015) (internal citation and quotation marks omitted) ("A plaintiff must exhaust his administrative remedies before filing his initial complaint in federal court . . . .[S]ubsequent exhaustion after suit is filed . . . is

insufficient.").

Moreover, insofar as plaintiff suggests that letters he wrote to the DOCCS Deputy Commissioner of Program Services, the DOCCS Commissioner, and Acting DOCCS Commissioner regarding the alleged April 16, 2016 incident constitutes an attempt at exhaustion, these letters were not addressed to, nor were they sent to, the Superintendent or CORC as part of the established grievance procedures. Dkt. No. 112-10. It is well-established in the Second Circuit that any informal resolution or relief outside of the administrative procedures does not satisfy exhaustion requirements. See, e.g., Macias v. Zenk, 495 F.3d 37, 43 (2d Cir. 2007); Day v. Chaplin, 354 F. App'x 472, 474 (2d Cir. 2009) (summary order) (noting that informal letters sent to prison officials "do not conform to the proper administrative remedy procedures."). Thus, because these letters were sent to officials outside the grievance chain of command, they do not satisfy the exhaustion requirement. As plaintiff has not provided evidence of exhaustion, the undersigned concludes that plaintiff has failed demonstrate that grievance GOV-16890-13 was properly exhausted.

## 2. Availability of Administrative Remedies

Plaintiff claims that the Superintendent and CORC "gave him a hard time," and suggests that the grievance process is rampant with "foul play." Am. Compl. at 25. Plaintiff further argues that the Gouvenour IGP "play[ed] games" with him, and did not file his appeal in retaliation for his lawsuit. Id. Defendants contend that the record clearly demonstrates that the grievance process was available to plaintiff. Dkt. No. 112-21 at 11.

There is no indication in the record that Gouverneur staff prevented plaintiff from further appeals, made the grievance process unavailable, or outright ignored his grievances at every step.  See Nelson v. Smith, No. 6:12-CV-6581(MAT), 2014 WL 2807557, at *2 (W.D.N.Y. June 20, 2014) (internal quotation marks and citation omitted) ("Where a party makes a clear and positive showing that pursuing available administrative remedies would be futile, the purposes behind the requirement of exhaustion are no longer served, and thus a court will release the [party] from the requirement.").

To the extent that plaintiff accuses the Gouverneur IGP of "foul play," plaintiff has not offered evidence to support that contention.  See Ross, 136 S. Ct. at 1860 (demonstrating that the grievance program is unavailable when "prison administrators thwart inmates from taking advantage of a grievance process" by misleading or threatening inmates "so as to prevent their use of otherwise proper procedure.").  Further, plaintiff's argument that the Gouverneur IGP retaliated against him for filing this lawsuit is without merit, because plaintiff was required to have exhausted his administrative remedies prior to the initiation of this lawsuit.  See Lopez, 136 F. Supp. 3d at 582.  Accordingly, as exhaustion is a prerequisite to filing an action in federal court (Woodford, 548 U.S. at 85), it is recommended that Mr. Farney's Motion for Summary Judgment be granted.

## C. Heck Doctrine

As an alternative ground to dismissal for failure to exhaust administrative remedies, defendant argues that plaintiff's claims are barred by Heck v. Humphrey.  Dkt. No. 112-21 at 11-13.   Plaintiff contends that "the Time Allowance Committee [ ] took all available good

time behavior allowance (good time credit) directing that [plaintiff] be held until his maximum expiration date . . . thereby . . . plac[ing] [him] in a [position] that he has been denied the equal opportunity others without disabilities have" to combat his alcohol and substance abuse through rehabilitation.  Am. Compl. at 4.

In Heck v. Humphrey, the Supreme Court of the United States created a jurisdictional prerequisite to civil suits brought under 42 U.S.C. § 1983:

> [i]n order to recover damages for harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance for a writ of habeas corpus.

Heck, 512 U.S. 477, 486-87 (1994).  Therefore, when an inmate seeks damages in a § 1983 action, "the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated."  Id. at 487.  Where the Heck doctrine applies, a plaintiff "ha[s] no cause of action under § 1983."  Poventud v. City of N.Y., 750 F.3d 121, 130 (2d Cir. 2014).

In Edwards v. Balisok, 520 U.S. 641 (1997), the Supreme Court extended the Heck doctrine to disciplinary proceedings, holding that a plaintiff's procedural due process claim regarding a prison disciplinary hearing was not cognizable under § 1983 where the due process claim necessarily implied the invalidity of the disciplinary disposition and/or punishment unless the disposition has been reversed.  Balisok, 520 U.S. at 650.  "The rule

announced in <u>Heck v. Humphrey</u> thus applies whenever a prisoner challenges the fact or length of his conviction or sentence.  This includes situations in which an inmate challenges the denial of 'good time' credits, where such denial impacts the duration of his confinement."  <u>Phelan v. Hersh</u>, No. 9:10-CV-0011 (GLS)(RFT), 2010 WL 277064, at *3 (N.D.N.Y. Jan. 20, 2010) (citing <u>Balisok</u>, 520 U.S. at 646-48; <u>Higgins v. Coombe</u>, No. 95 Civ. 8696(RCC), 1999 WL 760658, at *3-4, (S.D.N.Y. Sep. 24, 1999); <u>Odom v. Pataki</u>, No. 00 Civ. 3727, 2001 WL 262742, at *3-4 (S.D.N.Y. Mar. 15, 2001)).  In <u>Peralta v. Vasquez</u>, 467 F.3d 98 (2d Cir. 2006), the Second Circuit held:

> a prisoner subject to such mixed sanctions can proceed separately, under § 1983, with a challenge to the sanctions affecting his conditions of confinement without satisfying the favorable termination rule, *but that he can only do so if he is willing to forgo once and for all any challenge to any sanctions that affect the duration of his confinement*.

<u>Peralta</u>, 467 F.3d at 104 (emphasis in original).  The Court concluded that

> that the purpose of the <u>Heck</u> favorable termination requirement is to prevent prisoners from using § 1983 to vitiate collaterally a judicial or administrative decision that affected the overall length of their confinement, and that punishments related to their term of imprisonment, or the procedures that led to them (if the procedural defect at issue was critical to the imposition of the punishment), must be attacked through a habeas petition.

<u>Id.</u>

Plaintiff's equal protection claim challenges the April 2013 TAC's disposition, which ordered the loss of good time credits.  Am. Compl. at 4, 5.  Because the April 2013 TAC disposition "relates only to good time and thus, to the length of plaintiff's incarceration," plaintiff's claims fall within the gambit of the <u>Heck</u> doctrine.  <u>Lebron v. Armitage</u>, No. 9:08-

CV-508 (TJM/GJD), 2009 WL 9123270, at *6 (N.D.N.Y. Sept. 23, 2009).   The <u>Lebron</u> Court found that claims challenging TAC's decision to withhold good time credits do not fall into <u>Peralta</u>'s "mixed sanction" exception, and cannot proceed separately under section 1983.   <u>Id.</u>   Further, because the plaintiff did not show that the TAC disposition was invalidated, the plaintiff's claims relating to that decision were dismissed.   <u>Id.</u>   Here, a judgment in plaintiff's favor would necessarily invalidate his April 2013 TAC disposition wherein TAC withheld his good time credits.[7]   Therefore, the <u>Heck</u> doctrine bars plaintiff's equal protection claim against Mr. Farney.   <u>Heck</u>, 512 U.S. at 487.   Accordingly, it is recommended that Mr. Farney's motion on this ground be granted.


## D. Equal Protection

Addressing plaintiff's claims on the merits, Mr. Farney argues that plaintiff cannot establish unlawful discrimination due to disability in violation of the Fourteenth Amendment. Dkt. No. 112-21 at 13-17.   The Fourteenth Amendment's Equal Protection Clause mandates equal treatment under the law.   Essential to that protection is the guarantee that similarly situated persons be treated equally.   <u>City of Cleburne, Tex. v. Cleburne Living Ctr.</u>, 473 U.S. 432, 439 (1985); <u>Phillips v. Girdich</u>, 408 F.3d 124, 129 (2d Cir. 2005) ("To prove a violation of the Equal Protection Clause . . . a plaintiff must demonstrate that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination.").

---

[7] Basing its decision, in part, on plaintiff's withdrawal from the ASAT program, "TAC took all available good behavior allowance (good time credit) [and] direct[ed] that [plaintiff] be held until his maximum expiration date."   Am. Compl. at 4.

> [T]he Equal Protection Clause bars the government from selective adverse treatment of individuals compared with other similarly situated individuals if such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.

Vegas v. Artus, 610 F. Supp. 2d 185, 209 (N.D.N.Y. 2009) (internal quotation marks and citations omitted).

If an individual cannot "allege membership in [a protected] class, he or she can still prevail in . . . a class of one equal protection claim." Neilson v. D'Angelis, 409 F.3d 100, 104 (2d Cir. 2005) (internal quotation marks and citations omitted). To succeed, a plaintiff must show "that [he] were intentionally treated differently from other similarly-situated individuals without any rational basis." Clubside, Inc. v. Valentin, 468 F.3d 144, 158-59 (2d Cir. 2006). Additionally, plaintiffs must establish an extremely high "level of similarity between plaintiffs and the persons with whom they compare themselves . . . ." Neilson, 409 F.3d at 104. "Generally, whether parties are similarly situated is a fact-intensive inquiry" best suited for the jury unless "no reasonable juror could find that the persons to whom plaintiff compares itself are similarly situated," and then summary judgment is appropriate. Id. (citations omitted).

Plaintiff contends that Mr. Farney unlawfully discriminated against him because of his disability in violation of his equal protection rights. Am. Compl. at 5. It is well-settled that "[u]nless a classification trammels fundamental personal rights or is drawn upon inherent suspect distinctions such as race, religion or alienage," it is presumed that a distinction is constitutional as long as they are "rationally related to a legitimate state interest." City of New Orleans v. Dukes, 427 U.S. 297, 303 (1976). "Persons with

19

disabilities are not a suspect class and review of their equal protection claims are subject to rational basis review." Marino v. City University of N.Y., 18 F. Supp. 3d 320, 340 (E.D.N.Y. 2014) (citing City of Cleburne, 472 U.S. at 439). As plaintiff claims that Mr. Farney discriminated against him because of his disability, a heightened level of scrutiny does not apply. See id. Thus, plaintiff's claim will be assessed on status as a "class of one." Id. "To state a valid equal protection 'class of one' claim, a plaintiff must allege (1) that he has been intentionally treated differently from others similarly situated, and (2) that there is no rational basis for the difference in treatment." Scott v. Dennison, 739 F. Supp. 2d 342, 362 (W.D.N.Y. 2010) (internal quotation marks and citation omitted).

### 1. Similarly-Situated Persons

As to the first prong, plaintiff does not contend, and the record does not suggest, that Mr. Farney treated plaintiff differently than other similarly-situated persons. Plaintiff has not introduced evidence of Mr. Farney failing to punish another ASAT program participant who used the restroom without first asking permission. Rather, the record establishes that Mr. Farney treated plaintiff the same as any other ASAT program participant. The ASAT Behavior Contract requires that participants be "present for all treatment activities," "sit in an appropriate and attentive manner in an assigned seat," and that "all personal hygiene activities [ ] be attended to at appropriate times." Dkt. No. 112-4 at 2, 3. ASAT standards also provide that "violation of [such rules] may result in discharge from treatment, disciplinary action, behavioral contracts, *learning experiences*, pull ups, a referral to Treatment Plan Review Committee, or counseling notifications." Id. at 3

(emphasis added).  Plaintiff received and signed the ASAT Behavior Contract.  <u>See</u> Farney Decl., Ex. B.

Mr. Farney declared that it was his general practice to let participants use the restroom while the program was in session, as long as they first asked permission.  Farney Decl. at 4.  If a participant broke that rule, Mr. Farney routinely assigned essays as a "learning experience."  <u>Id.</u>  Mr. Farney declared that, in his twenty-four years as an ASAT instructor, he asked "countless inmates on countless occasions to write such essays and read them aloud to the class, including other inmates who have used the restroom during class without asking for permission."  <u>Id.</u>  There is no indication in the record that on April 16, 2013, after plaintiff used the restroom without asking permission, Mr. Farney treated plaintiff differently than other ASAT program participants who neglected to follow program rules.  Mr Farney followed ASAT standards, as well as his own general practice, and assigned plaintiff a 500-word essay as a learning experience.  <u>Id.</u> at 6.

Insofar as plaintiff bases his equal protection claim on denial of re-entry into the ASAT program (Am. Compl. at 4-5), the ASAT standards, policies, and procedures state that "should [an inmate] refuse [to abide by the Behavior Contract] or sign out of treatment, or is [he is] unsatisfactorily discharged from treatment, [he] must wait 30 days from the date of discharge before [he] can request consideration for readmission."  Dkt. No. 112-4 at 5.  Plaintiff has not introduced evidence supporting a finding that Mr. Farney allowed another ASAT program participant to re-apply to the program without waiting the mandated thirty days.  Accordingly, plaintiff has not established that Mr. Farney intentionally treated him differently from other similarly-situated persons.  <u>Scott</u>, 739 F. Supp. 2d at 362.

## 2. Rational Basis

Under the second prong of an equal protection 'class of one' claim, if a plaintiff can demonstrate that he was intentionally treated differently from other similarly-situated persons, the Court must determine if that treatment was "rationally related to a legitimate state interest." <u>Lee</u>, 87 F.3d at 60.[8] "In the prison context, preservation of security and discipline constitutes a legitimate penological interest . . . . Conduct expressly aimed at protecting prison security is 'legitimate' beyond question and is in fact 'central to all other correctional goals.'" <u>Kimbrough v. Fischer</u>, No. 9:13-CV-100 (FJS/TWD), 2016 WL 660919, at *6 (N.D.N.Y. Feb. 18, 2016) (citations omitted). Mr. Farney declared that "there are at least 30 inmates per ASAT class, and the ASAT instructor is often the only facility staff member present." Farney Decl. at 5.

> If inmates were allowed to [ ] get up in the middle of the ASAT program sessions, whenever, and however often they wished, without having to ask permission first . . . [it] would make it exponentially more difficult to keep track of inmates, their activity, and their location, while also monitoring what was going on with the program itself, thus creating unacceptable gaps in security and leading to potentially dangerous situations.

<u>Id.</u> at 4-5. Pursuant to Mr. Farney's declaration, it is clear that the ASAT policy that inmates ask permission prior to using the bathroom is aimed at ensuring prison security. <u>Id.</u>

Insofar as plaintiff suggests that there is no rational basis for the assigned discipline,

---

[8] Here, the undersigned concluded that plaintiff failed to demonstrate that plaintiff was intentionally treated differently from other similarly-situated persons. <u>See</u> subsection II.D.1. <u>supra</u>. However, for purposes of a complete analysis, the undersigned will perform a rational basis analysis.

Mr. Farney declared that "essays of [that] nature, also known as a 'learning experience,' is a standard behavioral mechanism employed in the ASAT program." Farney Decl. at 6. Plaintiff's assignment to write an essay on the importance of respecting others in the group falls within the programs goal of "group and individual counseling." Id. at 2, 6. Therefore, a rational basis exists for any difference in treatment. Thus, because plaintiff has failed to establish that Mr. Farney treated him differently than similarly-situated persons, and because a rational basis exists for the ASAT standards, policies, and procedures, it is recommended that defendant's Motion for Summary Judgment be granted.

Even assuming *arguendo*, that plaintiff alleged a prima facie claim of equal protection, plaintiff requested that the Court grant him injunctive relief by "restoring plaintiff to the ASAT program." Am. Compl. at 7. Plaintiff was released from prison on February 16, 2017, while his action was pending.[9] Plaintiff's amended complaint requested, in part, injunctive relief in the form of readmission to the ASAT program, however, when plaintiff was released from prison "he no longer had a continuing personal stake in the outcome of the action, and his claims were rendered moot." Khalil v. Laird, 353 F. App'x 620, 621 (2d Cir. 2009) (summary order) (internal quotation marks omitted) (quoting Muhammad v. City of N.Y., 126 F.3d 119, 123 (2d Cir. 1997)); see Pugh v. Goord, 571 F. Supp. 2d 477, 489 (S.D.N.Y. 2008) ("Where a prisoner has been released from prison, his claims for injunctive relief based on the conditions of his incarceration must be dismissed as moot."); Douglas v. Hollins, 160 F. App'x 55, 56 (2d Cir. 2005) (summary order) ("Because [the plaintiff] has

---

[9] The DOCCS look up website provides that plaintiff was conditionally released to parole on February 16, 2017. See DOCCS Lookup, http://nysdoccslookup.doccs.ny.gov/ (last visited Dec. 18, 2017).

been released from prison, his request for injunctive relief is moot."); <u>Smith v. Fischer</u>, 13-CV-6127-FPG, 2016 WL 3004670, at *2 (W.D.N.Y. May 23, 2016) ("It is settled in the Second Circuit that an inmate's release from prison moots his claims for declaratory and injunctive relief against the prison's officials."); <u>Henrius v. County of Nassau</u>, 13-CV-1192 (SJF)(SIL), 2016 WL 1171598, at *3 (E.D.N.Y. Mar. 24, 2016) (internal quotation marks omitted) (concluding that because the plaintiff was released from prison, any injunctive relief "would afford no legally cognizable benefits to him since he was no longer imprisoned within the DOC system."). Further, because plaintiff "had the same opportunity to reapply for admission to the ASAT program after his withdrawal as any other inmate in his situation would have had," he is not prevented from seeking such counseling in the future, if the he ever were to find himself incarcerated and in need of the program in the future. <u>See</u> Dkt. No. 112-5 ("Kelly Decl.") at 7. Therefore, even if plaintiff could establish that Mr. Farney violated his equal protection rights – a finding the undersigned does not make – his release from incarceration renders his injunctive relief in the form of re-admission to the ASAT program moot.

## E. ADA

As an alternative ground to dismissal, defendant argues that plaintiff cannot establish that Mr. Farney violated his rights under the ADA. Dkt. No. 112-21 at 17-22. Title II of the ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such

entity." 42 U.S.C. § 12132. A public entity includes "any department, agency . . . or other instrumentality of a State or States or local government[.]" 42 U.S.C. § 12131(1)(B). A qualified individual with a disability is defined as

> an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

Id. § 12141(2). To state a claim under the ADA, an inmate must demonstrate that

> (1) he or she is a "qualified individual with a disability"; (2) he or she is being excluded from participation in, or being denied the benefits of some service, program, or activity by reason of his or her disability; and (3) [the facility that] provides the service, program or activity is a public entity.

Clarkson v. Coughlin, 898 F. Supp. 1019, 1037 (S.D.N.Y. 1995); 42 U.S.C. § 12132.

Under the ADA, a "qualified individual with a disability" is an "individual with a disability who, with or without reasonable modifications . . . meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by the public entity." 42 U.S.C. § 12131(2). A person is an individual with a disability if he has "a physical or mental impairment . . . [that] substantially limits one or more of the major life activities of such individual," there is a "record of such an impairment," or the person is "being regarded as having such an impairment." 42 U.S.C. § 12102(1)(A)-(C); see also Manon v. Albany Cnty., No. 11-CV-1190 (GTS/CFH), 2012 WL 6202987, at *6 (N.D.N.Y. Oct.9, 2012).

> To determine if an individual meets any of the above criteria, courts apply a three part test . . . . First, a plaintiff must show

25

> that [he or] she suffers from a physical or mental impairment.
> Second, the plaintiff must establish that the activity [he or] she
> alleges to be impaired constitutes a "major life activity." Third,
> the plaintiff must show that [his or] her impairment
> "substantially limits" the major life activity previously identified.

Smith v. Masterson, 538 F. Supp. 2d 653, 657 (S.D.N.Y. 2008) (internal citations omitted);

see also Manon, 2012 WL 6202987, at *7. Major life activities include, inter alia, caring for

oneself, walking, standing, sitting, concentrating, and interacting with others, as well as the

"operation of a major bodily function" such as the function of the bowel or bladder. 29

C.F.R. § 1630.2(i)(1)(i), (ii).

Although the functioning of the bladder statutorily constitutes a "major life activity,"

plaintiff has not established that he suffers from a physical or mental impairment, or that

such impairment substantially limits his major life activity. See Smith, 538 F. Supp. 2d at

657. Plaintiff only refers to his disability as a "medical condition that requires [him] to

urinate frequently," but offers no testimony or medical records identifying a specific medical

condition. Am. Compl. at 4. In determining whether a major life activity is "substantially

limited," the Court must analyze: "(1) the nature and severity of the impairment; (2) the

duration or expected duration of the impairment; (3) the permanent or long-term impact,

or expected long-term impact of or resulting from the impairment." Baerga v. Hosp. for

Special Surgery, No. 97 Civ.0230 (DAB), 2003 WL 22251294, at *5 (S.D.N.Y. Sept. 30,

2003). Plaintiff's amended complaint offers little information as to the nature and severity

of his alleged impairment, other than it causes him to "urinate frequently." Am. Compl. at

4. He fails to allege how long he has suffered from frequent urination, or the long-term

impact of this condition. Moreover, it has been held that "the need to urinate frequently is

not a disability recognized by the courts." Giles v. NBC Universal, Inc., No. 10 Civ. 7461 (DAB), 2011 WL 4376469, at *5 (S.D.N.Y. Sept. 20, 2011) (citing Lewis v. Hill, No. 97 Civ. 3213 (DAB), 2005 WL 292748, at *4 (S.D.N.Y. Feb. 8, 2005) (finding that the plaintiff's prostate condition, which caused frequent urination, was not "so severe as to constitute a substantial limitation . . . [and] he has not met his burden to prove that he is 'disabled' within the meaning of the ADA."); see Rider v. General Motors Corp., No. 03-CV-0701C (F), 2006 WL 1520084, at *7 (W.D.N.Y. May 26, 2006) ("While plaintiff's urinary incontinence is a permanent condition and affects her on a daily basis, the impact of the condition on plaintiff's daily life is not so severe as to prevent or restrict her from doing activities that are of central importance to most people's daily lives."); Spruill v. New York City Health and Hosps. Corp., No. 06 Civ. 11362(WHP), 2008 WL 3911015, at *3 (S.D.N.Y. Aug. 25, 2008) ("Nor does [the plaintiff's] medication-induced need to urinate frequently substantially limit any major life activity."); Williams v. H.N.S. Mgmt. Co., Inc., 56 F. Supp. 2d 215, 221 (D. Conn. 1999) (finding that frequent urination only substantially limits a major life activity "where restrooms are not frequently accessible.").

Even if the undersigned concluded that plaintiff constituted a "qualified individual" under the ADA, plaintiff has failed to establish that he was excluded from participation in, or denied the benefits of, the ASAT program. See Clarkson, 898 F. Supp. at 1037. The record is clear that, although plaintiff withdrew voluntarily from the program, he could request readmission. In response to plaintiff's April 18, 2013 letter requesting "help [getting] him back into the program, DOCCS Deputy Commissioner of Program Services Jeff McKoy informed plaintiff that he "may request readmission to ASAT 30 days [from his

withdrawal] or earlier at the discretion of treatment staff." Dkt. No. 112-20 at 6.  Mr. McKoy also told plaintiff that to apply for readmission, he "must complete and submit a 'Readmission Request for Substance Abuse Treatment' [form] to ASAT staff for review/recommendation."  Id.  Mr. McKoy again referred plaintiff to these requirements in response to plaintiff's April 28, 2013 letter.  Id. at 7, 9.  The readmission requirements are also detailed in the ASAT standards, policies, and procedures that plaintiff signed on March 26, 2013.  Dkt. No. 112-4 at 5.  Plaintiff does not allege, and the record does not support, that Mr. Farney prevented plaintiff from re-applying to the program.

Moreover, insofar as plaintiff attempts to establish that Mr. Farney failed to offer him a reasonable accommodation for his disability, this argument must also fail.  Am. Compl. at 5.  To succeed on a failure to accommodate claim, a plaintiff must, in part, demonstrate that the "defendant had notice of the disability and failed to provide such accommodation." Lyons v. Legal Aid Soc., 68 F.3d 1512, 1515 (2d Cir. 1995).  Plaintiff does not contend, and the record does not suggest, that Mr. Farney knew of plaintiff's alleged disability and that it caused him frequent urination prior to the April 16, 2013 incident.  Mr. Farney declared that plaintiff never informed him of a medical condition, nor did he submit medical documentation as to any restrictions or accommodations needed.  Farney Decl. at 7-8. Therefore, because plaintiff failed to provide notice of his medical condition and any accommodation needed, he has failed to state a prima facie claim for failure to accommodate.  See Lyons, 68 F.3d at 1515.

Finally, to the extent that plaintiff's complaint can be read as arguing that he was denied the benefits of the ASAT program because TAC recommended withholding three

months of his good time credit, plaintiff acknowledged and signed the Program Refusal Notification, which stated that "refusal to participate in recommended programming may result in . . . the loss of Good Time." Dkt. No. 112-4 at 9. Additionally, it is well-settled that "an inmate has no constitutionally protected [liberty] interest in parole[,] . . . discretionary good time release[,] . . . . or to participation in prison programs which might expedite release." McMillan v. Perez, No. 14-CV-3854 (KMK), 2016 WL 4926202, at *5 (S.D.N.Y. Sept. 14, 2016) (internal quotation marks omitted) (citing Greenholtz v. Inmates of Neb. Penal and Corr. Complex, 442 U.S. 1, 7 (1979); Fifield v. Eaton, 669 F. Supp. 2d 294, 297 (W.D.N.Y. 2009); Johnson v. Baker, 108 F.3d 10, 11 (2d Cir. 1997)).

Accordingly, because plaintiff has failed to establish that he was a "qualified individual" and that he was excluded from participation in or denied access to the ASAT program, or that he was wrongfully denied a reasonable accommodation, it is recommended that Mr. Farney's Motion for Summary Judgment on this ground be granted.

### F. Personal Involvement

As an alternative ground to dismissal, defendant contends that plaintiff has failed to establish his personal involvement in the constitutional violations. "[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (quoting Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991) (additional citations omitted)). Thus, supervisory officials may not be held liable merely because they held a position of authority. Id.; Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996). However,

29

supervisory personnel may be considered "personally involved" if:

> (1) the defendant participated directly in the alleged constitutional violation;
>
> (2) the defendant, after being informed of the violation through report or appeal, failed to remedy the wrong;
>
> (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom;
>
> (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or
>
> (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (citing Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (additional citation omitted)).[10]  Assertions of personal involvement that are merely speculative are insufficient to establish a triable issue of fact.  See, e.g., Brown v. Artus, 647 F. Supp. 2d 190, 200 (N.D.N.Y. 2009).

Plaintiff contends that, as a result of his withdrawal from the ASAT program, "TAC took all available good behavior allowance (good time credit) [and] direct[ed] that [plaintiff] be held until his maximum expiration date." Am. Compl. at 4.  The record is clear that TAC, not Mr. Farney, recommended withholding three months of plaintiff's good time credit.

---

[10]    Various courts in the Second Circuit have postulated how, if at all, the Iqbal decision affected the five Colon factors which were traditionally used to determine personal involvement.  Pearce v. Estate of Longo, 766 F. Supp. 2d 367, 376 (N.D.N.Y. 2011), rev'd in part on other grounds sub nom., Pearce v. Labella, 473 F. App'x 16 (2d Cir. 2012) (summary order) (recognizing that several district courts in the Second Circuit have debated Iqbal's impact on the five Colon factors); Kleehammer v. Monroe Cnty., 743 F. Supp. 2d 175 (W.D.N.Y. 2010) (holding that "[o]nly the first and part of the third Colon categories pass Iqbal's muster . . . ."); D'Olimpio v. Crisafi, 718 F. Supp. 2d 340, 347 (S.D.N.Y. 2010) (disagreeing that Iqbal eliminated Colon's personal involvement standard).

Kelly Decl. at 7-8; Dkt. No. 112-6 (detailing TAC's decision).  Plaintiff has not alleged, and the record does not support, that Mr. Farney is a member of TAC, or that he in any way influenced TAC's decision.  Therefore, it cannot be said that Mr. Farney was personally involved in the decision to withhold three months of good time credit from plaintiff, and, therefore, he is not liable under the Colon factors.  See Thompson v. LaClair, No. 9:08-CV-0037 (FJS/DEP), 2009 WL 2762164, at *8 (N.D.N.Y. Aug. 25, 2009) (finding no personal involvement where the plaintiff's loss of good time credit was based on TAC's decision, not that of the defendant).

## G. Qualified Immunity

Mr. Farney argues that, even if plaintiff's constitutional claims are substantiated, he is entitled to qualified immunity.  Dkt. No. 112-21 at 24-25.  Qualified immunity shields public officials from being sued for conduct undertaken in the course of their duties so long as that conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (internal quotation marks and citation omitted); Eng v. Coughlin, 858 F.2d 889, 895 (2d Cir. 1988).  However, even if the constitutional privileges "are so clearly defined that a reasonable public official would know that his actions might violate those rights, qualified . . . immunity might still be available . . . if it was objectively reasonable for the public official to believe that his acts did not violate those rights."   Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991); Magnotti v. Kuntz, 918 F.2d 364, 367 (2d Cir. 1990) (internal citations omitted).  A court must first determine whether, if the plaintiff's allegations are

31

accepted as true, there would be a constitutional violation. Saucier v. Katz, 533 U.S. 194, 201 (2001). Only if there is a constitutional violation does a court proceed to determine whether the constitutional rights were clearly established at the time of the alleged violation. Aiken v. Nixon, 236 F. Supp. 2d 211, 230 (N.D.N.Y. 2002).

Here, plaintiff has not established a constitutional violation to satisfy the first prong of the qualified immunity test. See subsection III.B.-F. supra. Moreover, it was objectively reasonable for Mr. Farney, abiding by ASAT standards, policies, and procedures and his twenty-four years of experience as an ASAT instructor, to counsel plaintiff following his rule violation, especially because he did not know that plaintiff allegedly suffered from a medical condition. See subsection III.D. supra. By assigning plaintiff a "learning experience" consistent with the ASAT standards, it cannot be said that Mr. Farney objectively knew he was violating plaintiff's constitutional rights because he was unaware that plaintiff suffered from an alleged medical condition that caused frequent urination. See Am. Compl. at 4. Because there is no constitutional violation, the undersigned does not reach whether the constitutional rights were clearly established at the time of the alleged violation. Aiken, 236 F. Supp. 2d at 230. Accordingly, in the alternative, it is recommended that Mr. Farney's motion on this ground be granted.

### H. Eleventh Amendment

Mr. Farney argues that he is entitled to Eleventh Amendment immunity relating to plaintiff's claims against him in his official capacity. The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit

in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. AMEND. XI. "[D]espite the limited terms of the Eleventh Amendment, a federal court [cannot] entertain a suit brought by a citizen against his [or her] own State. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 98 (1984) (citing Hans v. Louisiana, 134 U.S. 1, 21 (1890)). Regardless of the nature of the relief sought, in the absence of the State's consent or waiver of immunity, a suit against the State or one of its agencies or departments is proscribed by the Eleventh Amendment. Halderman, 465 U.S. at 100. Section 1983 claims do not abrogate the Eleventh Amendment immunity of the states. See Quern v. Jordan, 440 U.S. 332, 340-41 (1979).

Moreover, suit against a state official in his or her official capacity is a suit against the entity that employs the official. Faird v. Smith, 850 F.2d 917, 921 (2d Cir. 1988) (citing Edelman v. Jordan, 415 U.S. 651, 663 (1974)). "Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself," rendering the latter suit for money damages barred even though asserted against the individual officer in his official capacity. Kentucky v. Graham, 473 U.S. 159, 166 (1985).

Because plaintiff seeks monetary damages against Mr. Farney for acts occurring within the scope of his duties, the Eleventh Amendment bar applies. However, although plaintiff lists Mr. Farney's "official position" on his amended complaint, the Court, in deference to plaintiff's pro se status, infers that plaintiff has also brought suit against Mr.

33

Farney in his individual capacity. See Thomas v. Calero, 824 F. Supp. 2d 488, 498-99 (S.D.N.Y. 2011) ("We do not read plaintiff's allegations as [suing defendants only in their official capacities], since they appear to be intended to plead that the individual defendants were acting under color of state law, a pleading requirement for stating a claim under section 1983."). However, to the extent that plaintiff asserts claims against Mr. Farney in his official capacity, it is recommended that defendant's motion be granted, as such claims are barred by the Eleventh Amendment.

## IV. Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby

**RECOMMENDED**, that defendant's Motion for Summary Judgment (Dkt. No. 112) be **GRANTED**, and plaintiff's amended complaint (Dkt. No. 51) be **DISMISSED in its entirety with prejudice**; and it is

**ORDERED**, that the Clerk of the Court correct the caption on the docket to reflect John Farney as the proper defendant; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order on all parties in accordance with Local Rules.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Servs., 892 F.2d

34

15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED R. CIV. P. 6(a), 6(e), 72.[11]

**IT IS SO ORDERED**.

Dated: December 21, 2017
Albany, New York

Christian F. Hummel
U.S. Magistrate Judge

---

[11]  If you are proceeding pro se and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order was mailed to you to serve and file objections.  FED. R. CIV. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Id. § 6(a)(1)(C).

35